**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 18-3736 and 19-1636
_____

UNITED STATES OF AMERICA
v.

SHAWN MILLS

and

RAPHAEL HUNT-IRVING,

*Appellants*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court Nos. 2-14-cr-00520-003 and
2-14-cr-00520-005
District Judge: Honorable Gerald A. McHugh

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on

May 18, 2020

_____

Before: McKEE, BIBAS, and COWEN, *Circuit Judges*.

(Opinion filed: June 9, 2021)

_____

_____

McKee, *Circuit Judge.*

Raphael Hunt-Irving and Shawn Mills were jointly tried and convicted of crimes arising from their involvement with a conspiracy to distribute cocaine. Their appeals have been consolidated. Hunt-Irving appeals the denial of his motion to suppress and motion for a new trial. He also argues that his trial counsel was constitutionally ineffective and that he constitutionally cannot be convicted of being a felon-in-possession of the firearm that he possessed. The latter claim is based upon his assertion that his prior felony conviction is not sufficient to disqualify him from owning a firearm.

Shawn Mills challenges the sufficiency of the evidence supporting his conviction and the exclusion of his expert's testimony. For the reasons that follow, we will affirm the District Court's judgments for both defendants. [1]

## I.

### A.

_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

[1] The district court had jurisdiction over the case pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

Hunt-Irving argues that the protective sweep that the agents performed violated the limitations the Supreme Court imposed in *Maryland v. Buie*.[2] Although the government argues that this aspect of Hunt-Irving's Fourth Amendment claim has been waived because it was not raised before trial, the District Court correctly concluded that this argument was, at least arguably, subsumed in Hunt-Irving's suppression hearing.[3] The District Court's analysis is a careful parsing of Hunt-Irving's pretrial suppression hearing and a very good explanation of why any violation of *Buie* would not entitle Hunt-Irving to relief, even if that claim was preserved. Hunt-Irving asks for the physical evidence seized from his home to be suppressed. However, the AK-47 was not discovered as a result of the protective sweep. Rather, it was discovered as a result of Hunt-Irving's telling the agents that he had "a hunting rifle" in the closet, when the agents asked if he had any weapons in the house.[4] Moreover, as the District Court

---

[2] 494 U.S. 325 (1990). We review the factual findings the court made in its suppression rulings for clear error, and we afford de novo review to the court's legal rulings. *United States v. Goldstein*, 914 F.3d 200, 203 n.15 (3d Cir. 2019) (internal quotation marks omitted). We review the denial of a motion for a new trial pursuant to Rule 33 for abuse of discretion. *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008).

[3] We agree with the District Court's conclusion that the argument was not waived. Although Hunt-Irving did not raise this argument in his motion to suppress, he did raise the argument in the suppression hearing. At the suppression hearing, he stated, "I think they can secure the weapon, but I don't think that that gives them probable cause to do anything else. I mean I think the fact they're saying, hey, we discovered a weapon in the house and because we discovered the weapon, we now -- we now have some reason to search for what?" App. 313. These statements mirror his appellate argument, that the sweep lasted for too long and reached areas too far away from the area of arrest under *Buie*. The same facts and law underlie both.

[4] App. 17. The District Court didn't address the AK-47 because it thought Mills was not challenging that evidence, though on appeal, Mills claims that the District Court misunderstood his argument.

explains in its thorough and well-reasoned opinion, the scale, the cash, and the handgun were not recovered as a part of the sweep. We will affirm the Court's rejection of Hunt-Irving's challenge to the sweep substantially for the reasons set forth by the District Court.

Hunt-Irvington next argues that this search tainted his subsequent consent to a search of the second floor, and, as a result, all fruits of that search should be suppressed under the exclusionary rule and the test set forth in *Brown v. Illinois*.[5] The District Court readily rejected that claim, and we agree. The protective sweep was irrelevant to his consent to search.

## B.

Hunt-Irving argues that his attorney rendered ineffective assistance by conceding the existence of the rifle upstairs because it was not supported by a reasonable strategy. However, ordinarily, we defer issues of ineffective assistance of counsel to a collateral attack rather than reviewing them on direct appeal, unless the record is sufficient to allow a ruling on the issue.[6] Here, as described in *Massaro*, the record from the suppression hearing was "not developed precisely for the object of litigating or preserving the claim," and while it does "reflect the action taken by counsel [it does] not [reflect] the reasons for it."[7] Thus, we will deny Thornton's claim of ineffective assistance of counsel without

---

[5] 422 U.S. 590 (1975).
[6] *Massaro v. United States*, 538 U.S. 500, 503-04 (2003); *United States v. Thornton*, 327 F.3d 268, 271-72 (3d Cir. 2003).
[7] *Massaro*, 538 U.S. at 505.

prejudice to his right to raise this claim on a collateral attack brought pursuant to 28 U.S.C. § 2255.

## C.

Hunt-Irving's final argument is that applying the weapons disenfranchisement contained in 18 U.S.C. § 922(g)(1) to him violates his Second Amendment rights because of the nature of his prior convictions. He was previously convicted of tampering with public records with the intent to defraud, in violation of 18 Pa. Cons. Stat. § 4911(a) and (b).

This argument is now foreclosed by our decision in *Folajtar*.[8] We there held that the legislature's designation of an offense as a felony is generally conclusive in determining whether the offense is sufficiently serious to fall outside Second Amendment protections.[9] Like Folajtar's crime, Hunt-Irving's predicate convictions include the intent to defraud, and necessarily entail deceit.

## II.

## A.

Mills argues that insufficient evidence supported his conviction of conspiracy to possess 500 grams or more of cocaine with the intent to distribute. He contends that the Government failed to establish that he was the one speaking on the wiretap of Co-

---

[8] *Folajtar v. Att'y Gen.*, 980 F.3d 897 (3d Cir. 2020).
[9] *Id.* at 900.

Defendant Church's phone. However, there is sufficient evidence to support Mills' conviction under both the deferential standards of Rule 29 and Rule 33.

We exercise plenary review over a district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence and thus apply the same standard as the District Court.[10] In reviewing a Rule 29 motion, we apply "a particularly deferential standard of review, viewing the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."[11] "The verdict must be upheld as long as it does not 'fall below the threshold of bare rationality.'"[12] We review the District Court's denial of a motion for a new trial for abuse of discretion.[13]

Viewing the evidence and reasonable inferences derived therefrom in the light most favorable to the Government, a rational trier of fact could have found Mills participated in the conspiracy. Mills acknowledges that the Government presented evidence that the phone at issue was registered to him at his address, and the individual speaking on the phone was addressed as "Lil Shawn."[14] The Government also presented wiretap evidence that Co-Defendant Church needed $1500 to purchase cocaine and Pinkney, who was charged elsewhere, testified that Mills provided Church with that

---

[10] *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008).
[11] *Id.* (citations omitted).
[12] *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)).
[13] *Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994).
[14] Mills Op. Br., 12.

amount of money.  Thus, the evidence was sufficient, and the District Court did not err in denying Mill's motion for judgment of acquittal, nor did it abuse its discretion by denying Mills a new trial.

**B.**

Mills contends that had he been able to present evidence from his forensic expert in voice identification analysis, she would have opined that the voice on the wiretap was not Mills'.  We review the District Court's ruling regarding the admissibility of expert testimony for abuse of discretion.[15]

The District Court found the methodology the expert applied could not satisfy *Daubert*.  In *Daubert*, the Supreme Court held that scientific expert testimony is admissible only if it is relevant and reliable.[16]  It identified factors to consider in assessing the reliability of a scientific theory or technique, including "whether the theory or technique has been subjected to peer review and publication" and whether the theory or method has been generally accepted by the scientific community.[17]  The District Court relied partly on *United States v. Angleton*, which concluded that the proposed expert testimony on aural spectrographic voice identification failed to meet the *Daubert* standard for reliability.[18]  Even since *Angleton*, the District Court noted, no federal court has accepted such voice identification evidence.  The District Court acknowledged the

---

[15] *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001).
[16] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[17] *Id.* at 593-94.
[18] 269 F. Supp. 2d 892, 905 (S.D. Tex. 2003).

technology has improved but found the technology is not generally accepted by the scientific community. Moreover, the District Court pointed out that even the FBI, which has much to gain from such a powerful prosecutorial tool, considered voice recognition technology insufficiently reliable to be offered as evidence in court. Finally, the District Court carefully explained that the technology has not been validated by peer review and that the proposed expert admitted she subjectively chose which calls to sample. We find no fault with the District Court's reasoning and will affirm its decision to exclude this testimony.

**III.**

For the reasons set forth above, we will affirm the District Court's judgments in both Hunt-Irving's and Miller's cases.